SUMMARY MEMORANDUM OPINION; NOT INTENDED
FOR PUBLICATION IN THE OFFICIAL REPORTERS

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM RUSSELL JEWETT, JR.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF STATE, et al.**, <br><br> Defendants. | Civil Action No. 11-cv-1852 (RLW) |

## MEMORANDUM OPINION[1]

Plaintiff William Russell Jewett, Jr. ("Jewett") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, to obtain information from the United States Department of State ("DOS") and the United States Secretary of State (collectively, "Defendants") about his arrest and extradition. This matter is before the Court on Defendants' Motion for Partial Summary Judgment and Supplemental Motion for Summary Judgment. (Dkt. Nos. 13 & 21). For the reasons discussed below, Defendants' motions will be granted.

**I. Factual Background To Jewett's Amended Complaint**

At present, Jewett is confined at the Federal Correctional Complex in Yazoo City, Mississippi. (Dkt. No. 6, ¶ 3). Pursuant to FOIA and the Privacy Act, on January 4, 2011, he

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. Cf. Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

sent a seven page request by certified mail to Defendants. (Id. ¶ 6). Among other things, the request asked for "any and all Extradition Files and Records referencing me that are maintained by the United States Department of State including its Embassy's [sic] or Consulates, including (but not limited to) extradition files or records in Belmopan, Belize or any other Embassy office or Consulate," and "a compiled file containing (1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants, and/or detainers, (5) final and closing investigation reports[;] and (6) any records not otherwise exempt by statute." (Dkt. No. 6, at 9-10). The request concludes by stating that Defendants have twenty business days "to provide the information and material sought." (Id. at 15).

Twenty calendar days after the date of his request, on January 24, 2011, Defendants sent Jewett a letter stating that they "will begin the processing of your request." (Id. at 17). Jewett claims that he sent a letter to Defendants on March 7, 2011 regarding the status of his request; it is not disputed that he received no reply. (Dkt. No. 6, ¶¶ 7-8). Then on May 2, 2011, Jewett sent another inquiry about the status of his request, stating that the letter was his "last attempt to obtain the information that I have formally requested" before "present[ing] this request for Judicial Review." (Dkt. No. 6, at 19). Defendants responded on May 10, 2011[2] that Jewett's request "has been assigned for processing," and that if "any responsive non-exempt records are located and reviewed, they will be sent to you." (Id. at 21). Jewett filed the present action on October 20, 2011, (Dkt. No. 1), and an amended complaint on November 7, 2011, (Dkt. No. 6). The amended complaint demands that Defendants produce all relevant documents, and also asks for costs including "reasonable attorneys [sic] fees." (Dkt. No. 6, at 6-7).

---

[2] Given the difficulty of reading the blurry date stamped thereon, Jewett's complaint understandably misidentifies the date of this letter as May 18, 2011. (See Dkt. No. 6, ¶ 10).

**II. Factual Record Developed After Jewett Filed His Amended Complaint**

Defendants moved for partial summary judgment on behalf of themselves and the United States Marshals Service ("USMS") on March 9, 2012; Defendants involved USMS in the review of documents because certain documents Defendants identified originated with USMS. (Dkt. No. 13). As part of that motion, Defendants described their efforts to search for, review, and produce relevant documents to Jewett. Defendants, after reviewing Jewett's request, identified five State Department offices "reasonably likely to have responsive documents." (Dkt. No. 13-1, ¶ 6). After searching the five offices using electronic searches as well as examining paper files where appropriate, they identified 43 documents responsive to Jewett's request. (Id. ¶¶ 6-13).

The 43 responsive documents originated with various federal agencies. Ten documents originated with the Drug Enforcement Administration ("DEA"), and one originated with the Federal Bureau of Investigation ("FBI"); these eleven were referred to the DEA and FBI to review and respond to Jewett directly. (Id. ¶ 16). Two documents originated with the USMS; Defendants referred one of those to USMS to review and respond to Jewett directly, while the other was referred to USMS for consultation but to be returned to Defendants. (Id.). Of the remaining 30, Defendants released twenty-five in full to Jewett, released three in part, and withheld two. (Id.). They did so in three separate productions: December 6, 2011; January 9, 2012; and February 24, 2012. (Dkt. No. 13-3, ¶¶ 8-10). The latter date included the document previously referred to USMS for consultation. (Id. ¶ 10). The document referred to USMS for direct response to Jewett amounted to seven pages, and on January 26, 2012, they produced them all, with redactions on three pages and none on the other four. (Dkt. No. 13-4, ¶ 4).[3] On March

---

[3] On January 19, 2012, Defendants sent five additional pages to the USMS for review. USMS sent these to Jewett directly on January 31, 2012—two pages with limited information withheld, and three pages released in full. (Dkt. No. 13-4, ¶¶ 5-6).

9, 2012, before DEA and FBI finished their review, Defendants moved for partial summary judgment on behalf of themselves and USMS. (Dkt. No. 13).

Subsequent to that motion, the FBI released three pages of material to Jewett on March 7, 2012 with some information withheld pursuant to FOIA. (Dkt. No. 21-2, ¶ 3). The DEA released twenty redacted pages and ten full pages to Jewett on April 26, 2012. (Id. ¶ 16). For the withheld material, DEA claimed exemptions under the Privacy Act and FOIA. (Id. ¶ 17). Following the release of documents by Defendants through the FBI and DEA, Defendants filed a Supplemental Motion for Summary Judgment, claiming that all non-exempt, segregable documents had been released to Jewett following a proper search for the records. (Dkt. No. 21-1, at 1).

### III. Legal Standards Regarding Summary Judgment, FOIA, and the Privacy Act

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing FED. R. CIV. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

The goal of FOIA is to promote "broad disclosure" of government records, and the statute's exemptions are to be narrowly construed. Milner v. Dep't of Navy, 131 S. Ct. 1259, 1261 (2011) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)). However, FOIA certainly does not permit members of the public to have unlimited access to

government records.  McCutchen v. United States Dep't of Health and Human Services, 30 F.3d 183, 184 (D.C. Cir. 1994).  If a document falls within any of the Act's exemptions, an agency does not have to disclose the document.  See 5 U.S.C. § 552(b); Tax Analysts, 492 U.S. at 150-51; McCutchen, 30 F.3d at 184.

The Privacy Act limits an agency's ability to disclose records pertaining to an individual without their consent.  5 U.S.C. § 552a(b); National Aeronautics and Space Admin. v. Nelson, 131 S. Ct. 746, 762 (2011).  However, an individual may access his own records unless that information falls into one of the statute's exemptions, such as records relating to the enforcement of criminal laws.  See 5 U.S.C. §§ 552a(d), (j)(2), (k)(2).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  In a FOIA action, summary judgment for an agency is appropriate where there are no material facts in dispute and the requested information has been produced, is unidentifiable, or is exempted from disclosure. FED. R. CIV. P. 56(a); Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).  Summary judgment may be granted based on declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984)).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. U.S.

Dep't of Justice, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting Tax Analysts, 492 U.S. at 142).

In responding to a FOIA request, an agency must search its records for responsive documents. See 5 U.S.C. § 552(a)(3)(A). The agency has the burden to establish that it made a good faith effort to conduct a reasonable search for responsive records. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The standard is one of reasonableness. Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). To meet this burden, the agency can submit affidavits or declarations that describe the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard, 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## IV. Analysis

### A. Jewett's Claim Of Undue Delay In The Release Of Information Lacks Merit

Jewett's amended complaint suggested he is entitled to an order from this court because he did not receive material in a timely manner. He stated that "Defendants have failed to make a Determination or provide records in the applicable time limits as requested by Plaintiff . . . as allowed under 5 U.S.C. [§§] 552(a)(6)(A) and (B)." (Dkt. No. 6, ¶ 12). But this is not accurate. FOIA required Defendants to respond to Jewett's request within twenty business days and notify him of their determination, not to send all records within twenty days. See 5 U.S.C. §

552(a)(6)(A)(i); see also Citizens for Responsibility & Ethics in Washington v. Federal Election Comm'n, 839 F. Supp. 2d 17, 25 (D.D.C. 2011) ("Clearly, the FOIA does not require the responding agency to respond and produce responsive documents within twenty days . . . ."). This is exactly what Defendants did. They responded with a letter dated January 24, 2011, less than twenty business days after Jewett's initial request, stating they "will begin the processing of [Plaintiff's] request." (Dkt. No. 13-3, at 27). While perhaps Jewett was dissatisfied with the time involved in processing his request, "however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." Perry, 684 F.2d at 125. As Jewett has received all of the documents that he is entitled to, there is no other relief that this Court can give him.

In one sense, then, this ends the analysis for this case. Jewett's amended complaint only asks for the disclosure of documents, and Defendants have now complied. It is only in his Opposition to Defendants' Motion for Partial Summary Judgment that Jewett raises for the first time his claims that Defendants have "not conducted a proper search for records [and have] improperly exempted withheld records pursuant to proper FOIA and Privacy Act exemptions." (Dkt. No. 20, at 3). Because these issues arose after Jewett filed his amended complaint, the parties have fully briefed these claims, and dismissing the complaint only for the reason that Defendants have released information would likely result in Jewett filing a new complaint with these additional claims, the Court will address them in this Memorandum Opinion.

**B. Defendants Conducted A Reasonable Search For Documents**

Defendants provided considerable detail regarding the methods and efforts behind their search for responsive documents in this matter. The Declaration of Sheryl L. Walter ("Walter"), DOS's Director of the Office of Information Programs and Services, noted how her office

determined that five State Department offices were likely to have records, and that those offices were searched "by individuals who were familiar with both the subject matter of Plaintiff's request and also the contents and organization of the records systems searched." (Dkt. No. 13-3, ¶ 13). This included searches in electronic databases, (id. ¶¶ 18, 20, 22), at times using various terms to "increase[e] the flexibility and efficiency of searches," (see id. ¶¶ 16, 21). As appropriate, searches were conducted of paper records. (Id. ¶¶ 18, 22). Declarations from William E. Bordley (Dkt. No. 13-4), David M. Hardy (Dkt. No. 21-3), and William C. Little, Jr. (Dkt. No. 21-4), provide additional detail about the searches by USMS, FBI, and DEA, respectively.

An agency does not need to search every record system, but only those in which it believes responsive records are likely to be located. See Oglesby, 920 F.2d at 68. Walter's declaration demonstrates that Defendants made a reasonable determination about where documents related to Jewett's request might be located and conducted searches reasonably calculated to uncover his requested documents. (Dkt. No. 13-3, ¶¶ 11-23). Especially given that Defendants' declarations are "accorded a presumption of good faith," see SafeCard, 926 F.2d at 1200, their searches were reasonably calculated to uncover all responsive records. The four detailed affidavits submitted by Defendants, combined with an absence of evidence offered by Jewett, leads the Court to conclude that summary judgment is appropriate. See Perry, 684 F.2d at 127 (affirming summary judgment and noting that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA").

Jewett's contention that specific materials must exist but have not been produced, (Dkt. No. 20, at 22), does not make the search unreasonable. "[T]he fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it." Maynard v. CIA, 986 F.2d 547, 564 (1st Cir. 1993) (citation omitted). And the fact that a document indisputably exists but was not produced will not defeat summary judgment if the search conducted was diligent and reasonable. See National Magazine, Washington Bureau v. U.S. Customs Service, 71 F. 3d 885, 892 n.7 (D.C. Cir. 1995). The documents that Jewett references may have existed at one point, but the fact that they were not produced does not make Defendants' search unreasonable when "its search was reasonably calculated to uncover all relevant documents." Fischer v. U.S. Dep't of Justice, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (internal quotation marks and citations omitted). Thus, the Court finds that Defendants have conducted an adequate search for documents responsive to Jewett's request.

Jewett contends that because Walter was not individually responsible for the searches that were conducted and only possessed second-hand knowledge, her declaration cannot "provid[e] reliable assurances that a reasonable search has been conducted for all documents to which Plaintiff is entitled under the FOIA and Privacy Act." (Dkt. No. 20, at 6). This is an incorrect statement of the law. An individual coordinating an agency's search is the most appropriate to provide a comprehensive affidavit. See SafeCard, 926 F.2d at 1201; see also Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 160-61 (D.D.C. 2004) (ruling that the personal knowledge requirement is satisfied by a declaration from the employee who coordinated the agency's searches). Walter is the official immediately responsible for responding to FOIA and Privacy Act requests. (Dkt. No. 13-3, ¶ 1). As the coordinating individual for Defendants'

FOIA and Privacy Act requests, Walter was the most appropriate individual to provide a declaration regarding Jewett's request.

### C. Any Material Withheld Is Within The Statutory Exemptions Of FOIA And The Privacy Act

The Defendants and USMS withheld documents from their productions to Jewett, in part or in full, citing to FOIA Exemptions 6, (7)(C), and (7)(D), as well as the Privacy Act. (See Dkt. No. 13-2, at 11). The FBI withheld some of its production pursuant to FOIA Exemption 7(E). (Dkt. No. 21-1, at 5). The DEA redacted some of the materials it produced under the Privacy Act, as well as FOIA Exemptions 7(C), 7(E), and 7(F). (Id.). Jewett claims that Defendants and the USMS have improperly claimed exemptions under FOIA and the Privacy Act, (Dkt. No. 20, at 6), and seems to argue the same regarding the FBI and DEA, (Dkt. No. 24, at 5).[4]

#### 1. FOIA Exemption 6

FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This exemption may be considered for any and all information that "applies to a particular individual," U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982), and covers "detailed government records on an individual which can be identified as applying to that individual," Judicial Watch, Inc. v. Dep't of Commerce, 337 F. Supp. 2d at 176 (internal citations and quotation marks omitted). If information meets the threshold requirement of § 552(b)(6), there must be a balancing of an individual's privacy interest and the public's interest in disclosure. See Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C.

---

[4] Jewett claims that Defendants and USMS improperly applied the exemption under 5 U.S.C. § 552(b)(7)(A). (Dkt. No. 20, at 7). However, Defendants and USMS never relied on 5 U.S.C. § 552(b)(7)(A). They relied on 5 U.S.C. §§ 552(b)(6), (b)(7)(C)-(D). (See Dkt. No 13-1, ¶ 14; Dkt. No. 13-4, ¶4).

Cir. 1999); Billington v. U.S. Dep't of Justice, 245 F. Supp. 2d 79, 85 (D.D.C. 2003). However, personal information that fails to reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 774-75 (1989).

Defendants' Walter Declaration identifies five documents that were withheld in whole or in part based on Exemption 6 in conjunction with other FOIA and Privacy Act exemptions. (Dkt. No. 13-3, ¶¶ 33-41). The material includes law enforcement reports, a private communication between an individual and the U.S. Embassy in Belize seeking assistance with a family emergency, and a photocopy of a "certificate of Live Birth." (Id.). Defendants withheld the material to prevent the disclosure of "names and other identifying personal information." (Id. ¶ 27). Defendants reasonably concluded that this information would result in an unwarranted invasion of privacy and would not further the "core purpose" of FOIA: revealing "what the government is up to." (Id. ¶ 29). Given that Defendants excised only narrow personal information and not information relating to the operation or activities of the federal government, Defendants properly invoked Exemption 6 to withhold this information. See Lepelletier, 164 F.3d at 46.

### 2. FOIA Exemption 7

FOIA Exemption 7 protects from disclosure material compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7); see FBI v. Abramson, 456 U.S. 615, 622 (1982). To assess whether records were compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and

11

internal quotation marks omitted). The agency need not link its collection of material to a specific or ongoing investigation. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 78 (D.C. Cir. 2002).

Defendants easily satisfy the threshold showing that the relevant records are law enforcement records for purposes of Exemption 7. For example, the documents withheld include: (1) information compiled in the course of a USMS fugitive investigation to locate and arrest Jewett; (2) a report prepared by the Regional Security Officer at the U.S. Embassy in Belize for U.S. officials to inform them of law enforcement action regarding Jewett; and (3) an Investigative Management System Comprehensive Case Report of the Criminal Investigative Liaison Branch of the Diplomatic Security Service concerning Jewett. (See Dkt. No. 13-3, ¶¶ 35, 40-41; Dkt. No. 13-4, ¶ 9). There can be no serious dispute that this information was compiled for the purposes of law enforcement.

### a. Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This determination requires a balancing of the individual's right to privacy and the public's right of access to the information in government files. See, e.g., Beck v. U.S. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993). When conducting this balancing, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Comm., 489 U.S. at 773). The plaintiff bears the burden of establishing the public interest in disclosure is significant enough to overcome legitimate privacy interests. Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995). The

requester must demonstrate that the public interest sought to be advanced is significant and more specific than having the information for its own sake, and that the "information is likely to advance that interest." Boyd v. Criminal Division of the United States Dep't of Justice, 475 F.3d 381, 387 (D.C. Cir. 2007) (citations and internal quotations omitted). This balancing should only happen once a requestor has produced meaningful evidence that would cause a reasonable person to believe that the government has engaged in impropriety. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004).

Exception 7(C) protects several categories of information. These categories include:

- names of law enforcement officers who work on criminal investigations, Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992);

- identities of third-party individuals who were of interest to law enforcement because of their criminal activities, Russell v. FBI, No. 03-0611, 2004 WL 5574164, at *6 (D.D.C. Jan 9, 2004); Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 46 (D.D.C. 1999);

- those merely mentioned in law enforcement files, see Russell, 2004 WL 5574164, at *5; Coleman v. FBI, 13 F. Supp. 2d 75, 80 (D.D.C. 1998); and

- information on individuals who provide information to law enforcement authorities. See Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

Pursuant to Exemption 7(C), Defendants withheld names and identifying information of individuals other than Jewett himself, and USMS withheld the names and telephone numbers of government employees, law enforcement officers, and third parties. (See Dkt. No. 13-3, ¶¶ 35, 41; Dkt. No. 13-4, at 18-19). "[U]nless access to the names and addresses of private individuals

appearing in files within the ambit of Exception 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1205. Jewett has not presented compelling evidence that this information must be released for a significant public interest, see Perrone, 908 F. Supp. at 26, and given the legitimate privacy interest at stake, Defendants and USMS properly withheld this information.

Similarly, DEA withheld information pursuant to Exemption 7(C)[5] about law enforcement personnel that "were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations for which there is no public interest to be served." (Dkt. No. 21-4, ¶ 24). As above, Jewett fails to present a reason that this information must be released for a significant public interest, and thus the Court concludes that DEA properly withheld this information.

    **b. Exemption 7(D)**

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes which could reasonably be expected to disclose the identity of a confidential source" and "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of [E]xemption 7(D) if the source

---

[5] DEA did so "in conjunction with" FOIA Exemption 7(F), (Dkt. No. 21-1, at 14), which exempts from mandatory disclosure "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to endanger the life or physical safety of any individual," 5 U.S.C. § 552(b)(7)(F). Because the Court finds the agency properly withheld under Exemption 7(C), a separate consideration under 7(F) is not necessary. See, e.g., Am. Civil Liberties Union v. U.S. Dep't of Defense, 628 F.3d 612, 623 n.3 (D.C. Cir. 2011) ("We reiterate that the government need prevail on only one [FOIA] exemption; it need not satisfy both.").

provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted). In determining if implied confidentiality exists, key factors to consider include the nature of investigation, the source's relationship to the target of the investigation, and whether a source provided information "with an understanding that the communication would remain confidential." U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

Because Defendants and USMS used Exemption 7(D) to protect the identity of a confidential source,[6] they properly applied this Exemption. Defendants stated that they withheld information because a source provided information with the expectation of confidentiality and revealing that source's identity would put them at risk of retaliation. (Dkt. No 13-3, ¶¶ 32, 35, 41). Similarly, USMS stated they protected a source who provided information under circumstances where a promise of confidentiality may be inferred. (Dkt. No. 13-4, ¶ 11 & Ex. D). Given that the investigative information identified Jewett as being armed and dangerous and having a criminal history involving weapons charges, assurances of confidentiality can be reasonably inferred. See Cuccaro v. Secretary of Labor, 770 F.2d 335, 360 (3d Cir. 1985). Jewett alleges that Defendants and USMS are making barren assertions of confidentiality considerations. (Dkt. No 20, at 6-7). However, as the above discussion demonstrates, the confidentially considerations are evident from the documentation itself, allowing for an inference of confidentiality. See Landano, 508 U.S. at 179. Given the sensitive nature of the information

---

[6] Whether there is only one confidential source or whether there are multiple confidential sources is intentionally left unclear by Defendants. For simplicity's sake, this Memorandum will refer only to a single source.

and the danger to the sources that could result from disclosure, Defendants and USMS properly invoked Exception 7(D) to withhold information relating to confidential sources.

### c. Exemption (7)(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Such records are properly withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. See, e.g., Morley v. CIA, 453 F. Supp. 2d 137, 157 (D.D.C. 2006), rev'd on other grounds, 508 F.3d 1108 (D.C. Cir. 2007). "Because the Exemption grants categorical protection to these materials, it requires no demonstration of harm or balancing of interests." Keys v. United States Dep't of Homeland Security, 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (citation and quotation marks omitted).

Both the FBI and DEA offer persuasive and unrebutted reasons for withholding information under Exemption 7(E). FBI asserted Exemption 7(E) only with respect to information that could allow people "to gain unauthorized access to, view and manipulate data, or otherwise interfere with the unclassified internet 'World Wide Web' and 'www' internet protocol and e-mail accounts assigned to the FBI employees involved in the investigation, thereby avoiding detection and allowing circumvention of the law." (Dkt. No. 21-3, ¶14). DEA asserted Exemption 7(E) for, among other reasons, to avoid "endanger[ing] the health and safety of law enforcement personnel." (Dkt. No. 21-4, ¶ 29). Jewett offers no rebuttal to the FBI's and DEA's reliance on this Exemption, and the Court will treat the matter as conceded.

### 3. Privacy Act

The Privacy Act states that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). Defendants' regulations relating to Exemption (k)(2) of the Privacy Act, 5 U.S.C. § 552a(k)(2), provide that the exemption from disclosure should be invoked "to fulfill commitments made to sources to protect their identities and the confidentiality of information and to avoid endangering these sources and law enforcement personal," 22 C.F.R. § 171.36(b)(2).

Defendants properly withheld documents pursuant to the Privacy Act. Defendants withheld two documents in their entirety because they contained information relating to a person or persons other than Jewett, namely a private communication between an individual and the U.S. Embassy in Belize relating to a family emergency, and a Certificate of Live Birth of Bridgett Jewett. (Dkt. No. 13-3, ¶¶ 37, 39). Defendants invoked Exemption (k)(2) to withhold a law enforcement report requesting assistance in locating and apprehending Jewett in order to protect a confidential source's identity. (Dkt. No. 13-3, ¶¶ 35, 41). These documents were properly withheld under the plain language of the Privacy Act, and Jewett offers nothing to the contrary. In addition, DEA withheld documents in their Investigative Reporting and Filing System ("IRFS"), as documents in IRFS are exempted by regulation. See 28 C.F.R. § 16.98(c)(3). And finally, DEA withheld information about a third party, as they are required to do under 5 U.S.C. § 552a(b), barring a situation not present here. Again, Jewett offers nothing to the contrary.

**D. Segregability**

FOIA requires that all "reasonably segregable" information be disclosed after deletion of exempted information unless the non-exempt portions "are inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1027 (D.C. Cir. 1999). Although Jewett has not challenged the segregability of the non-exempt information, the Court has "an affirmative duty to consider the segregability issue *sua sponte*." Trans-Pacific Policing Agreement, 177 F.3d at 1028. To demonstrate that all reasonably segregable material has been released, an agency must provide "detailed justification" rather than "conclusory statements." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977). However, the agency need not provide such a detailed justification as to effectively disclose the exempted material. Id. The agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Id. at 261 n.55.

All four agencies involved in this litigation have declared that they have released all reasonably segregable information to Jewett. Defendants and USMS discuss and attest to the agencies' review for segregable information in all documents withheld in whole or part. (See Dkt. No 13-3, ¶¶ 35, 37, 39, 41; Dkt. No. 13-4, ¶ 12). Information considered non-segregable was information that, when extracted from exempt information, would consist of "incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words," (Dkt. No. 13-3, ¶ 37), or "would yield a product with little, if any, informational value," (id. ¶ 39). Given the declarations offered by Defendants and USMS as to the examination for segregable information, this Court is satisfied that they released all segregable, non-exempt information to Jewett. The FBI and DEA offer similar information in the Supplemental Motion. The FBI stated they "made

every effort to provide plaintiff . . . with all reasonably segregable portions of releasable material." (Dkt. No. 21-3, at 6). And the DEA concluded that "it has been determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law." (Dkt. No. 21-4, ¶ 32). Because of these four Declarations, and the absence of any contradictory evidence, the Court finds that all reasonably segregable information has been released.

### E. Jewett Is Not Entitled To Any Fees

Finally, Jewett seeks "the costs of this action and an allowance for reasonable attorneys [sic] fees." (Dkt. No. 6, at 7). However Jewett has not "substantially prevailed" under the meaning of 5 U.S.C. § 552(a)(4)(E). See, e.g., Davis v. U.S. Dep't of Justice, 610 F.3d 750 (D.C. Cir. 2010). Moreover, as a pro se litigant, he is not entitled to attorney's fees. See Benavides v. BOP, 993 F.2d 257, 259-60 (D.C. Cir. 1993) ("[T]he word 'attorney,' when used in the context of a fee-shifting statute, does not encompass a layperson proceeding on his own behalf."). Accord Sukup v. EOUSA, No. 02-0355, 2007 WL 2405716, at *1 (D.D.C. Aug. 23, 2007) ("[p]ro se plaintiffs may not recover attorney's fees under FOIA"). Accordingly, his request for attorney's fees will be denied.

SUMMARY MEMORANDUM OPINION; NOT INTENDED
FOR PUBLICATION IN THE OFFICIAL REPORTERS

## **CONCLUSION**

Defendants have demonstrated that, in conjunction with other agencies, they engaged in a reasonable search for electronic and paper records related to Jewett, and produced all available material to him. Jewett has failed to rebut this evidence. As a result, Defendants' Motion for Partial Summary Judgment (Dkt. No. 13) and Supplemental Motion for Summary Judgment (Dkt. No. 21) are hereby **GRANTED**. An Order accompanies this Memorandum.


Date:  February 14, 2013

                                                           ROBERT L. WILKINS
                                                           United States District Judge